UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGE MRACNA,

    Plaintiff,                                        Hon. Paul L. Maloney

v.                                                      Case No. 1:07 CV 1071

CORRECTIONAL MEDICAL
SERVICES, et al.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

        This matter is before the Court on Defendants Correctional Medical Services, Inc., William Nelson, M.D., Thomas Lanore, P.A., Jane May, R.N., and Donna Lee, P.A.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), (dkt. #33); Defendants Aquino, Thompson, Wysozan, Pandya, and Boeve's Motion to Dismiss under FRCP 12(b)(6), (dkt. #36); Plaintiff's Motion to Supplement, (dkt. #57); and Plaintiff's Second Motion to Supplement, (dkt. #61).

        Pursuant to 28 U.S.C. § 636(b)(1)(B), the Court recommends that Defendants' motions both be **granted**. The Court also recommends that Plaintiff's claims against Defendants Irish and Ivens be **dismissed** for failure to timely effect service. The Court further recommends that Plaintiff's motions to supplement be **denied**.

**BACKGROUND**

In his complaint, Plaintiff asserts that Defendants failed to provide him with adequate medical treatment for his vision and prostate impairments. The following allegations are contained in Plaintiff's complaint.

**Vision Impairment**

In May 2002, Plaintiff was diagnosed with "cataracts in both eyes." On November 1, 2006, Plaintiff was examined by Defendant Irish. Plaintiff reported that his right eye "was under strain from compensating from blindness in [his] left eye." Defendant Irish concluded that Plaintiff had a "serious vision problem." A December 28, 2006 examination revealed a "fully developed cataract" in Plaintiff's left eye and a "moderately developed cataract" in Plaintiff's right eye. On January 17, 2007, Plaintiff was examined by Dr. Kinzinger, who confirmed this diagnosis and recommended surgery. Despite the severity of Plaintiff's vision impairment, CMS "denied Dr. Kinzinger's plan to perform eye surgery." On August 23, 2007, Plaintiff was examined by Dr. Totten, who also recommended that Plaintiff undergo eye surgery. As of October 24, 2007, the date on which Plaintiff initiated this action, he was still awaiting approval by CMS for this treatment.

**Prostate Impairment**

In January 2006, Defendant Lee (identified as Defendant VanderArc in Plaintiff's complaint) discovered "problems with [Plaintiff's] enlarged prostate." The results of blood tests, performed in March and May 2006, revealed "high PSA counts." Despite these results, Plaintiff did

not receive "immediate treatment," but instead had to wait until December 2006 to participate in further testing which revealed that he was suffering from prostate cancer.

On January 22, 2007, Plaintiff was examined by Dr. Kurello, who emphasized that Plaintiff receive "prompt treatment" for his prostate cancer. Despite Dr. Kurello's instruction that Plaintiff receive prompt treatment, Plaintiff had to wait until March 23, 2007, to meet with Dr. Mahacek, a radiation oncologist. Dr. Mahacek "expressed his concern" that Plaintiff begin cancer treatment "as soon as possible." Despite the doctor's concern, Plaintiff was forced to wait until June 7, 2007, to undergo further treatment. Plaintiff's care providers recommended that he be treated (at least initially) with injections of Lupron. Defendant Aquino subsequently informed Plaintiff that he would receive these injections from "a prison nurse." Plaintiff objected to this treatment because he "did not want to have his prostate treatment relegated to CMS nurses." Plaintiff's objections were disregarded and on July 14, 2007, Plaintiff received a Lupron injection administered by Defendant Wysozan. Plaintiff was also treated with the drug Terazosin, despite Dr. Kurello's opinion that "he really does not think that Plaintiff need[s] to be on Terazosin."

Plaintiff asserts that Defendants have denied him appropriate medical treatment in violation of the Eighth Amendment. Defendants Nelson, Lanore, May, and Lee now move to dismiss Plaintiff's claims for failure to properly exhaust administrative remedies. Defendants Aquino, Thompson, Wysozan, Pandya, and Boeve seek dismissal of Plaintiff's claims on the ground that they are entitled to immunity. Defendant CMS moves for dismissal on the ground that Plaintiff has failed to state a claim upon which relief may be granted. As discussed below, the Court recommends that Defendants' motions be granted. The Court further recommends that Plaintiff's claims against Defendants Irish and Ivens be dismissed without prejudice for Plaintiff's failure to timely effect service.

**I.        Motion to Dismiss for Failure to Exhaust Administrative Remedies**

Defendants Nelson, Lanore, May, and Lee move to dismiss Plaintiff's claims on the ground that Plaintiff has failed to properly exhaust his administrative remedies.

A.   **Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof

faces a "substantially higher hurdle."  *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)).  The Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it."  *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact."  *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

    **B.**  **Exhaustion Standard**

    Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516, 524 (2002).  Prisoners are no longer required to demonstrate exhaustion in their complaints.  *See Jones v. Bock*, 127 S.Ct. 910, 921 (2007).  Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing.  *Id.*  With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's

deadlines and other critical procedural rules." *Woodford v. Ngo*, 126 S.Ct. 2378, 2386-87 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 127 S.Ct. at 922-23.

When assessing whether a prisoner has properly exhausted his claims as required by the PLRA, it is appropriate to seek guidance from the substantively similar exhaustion rules applicable to petitions for writ of habeas corpus. *See Woodford,* 126 S.Ct. at 2384. In the habeas context, a petitioner is required to properly present his federal claims through one complete round of the State's established appellate review process. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). To "'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies." *Id.* at 848 (citation omitted). In the habeas context, "the sanction for failing to exhaust properly (preclusion of federal review) is called procedural default." *Woodford,* 126 S.Ct. at 2387. To determine whether a habeas petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir.2004), *cert. denied,* 544 U.S. 928 (2005); *accord Lancaster v. Adams,* 324 F.3d 423, 436-37 (6th Cir.2003).

Under the procedural default component of § 1997e(a), an inmate's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance. *See Johnson v. Meadows,* 418 F.3 d 1152, 1159 (11th Cir.2005), *cert. denied,* 126 S.Ct. 2978 (2006); *Spruill v. Gillis,* 372 F.3d 218, 222 (3rd Cir.2004) (holding that "the determination whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations"). Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and independent state ground, the procedural requirements of a prison grievance system may not be imposed in a way that offends the United States Constitution or the intended purposes of § 1997e(a). *See Spruill,* 372 F.3d at 232.

Defendants have submitted copies of two grievances that Plaintiff filed between July and October 2007. Plaintiff has included with his complaint, copies of a third grievance that he submitted in November 2006. The Court shall, therefore, examine these grievances to determine which (if any) claims in Plaintiff's complaint against Defendants Nelson, Lanore, May, and Lee have been properly exhausted.

C.     **Relevant Grievance Policy**

Michigan Department of Corrections Policy Directive 03.02.130[1] articulates the applicable grievance procedures for prisoners in MDOC custody. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. The policy provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within five business days of the response, or if no response was received, within five days after the response was due. The respondent at Step II is designated by policy, e.g., the regional health administrator for a medical care grievance. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. The Prisoner Affairs Section is the respondent for Step III grievances on behalf of

---

[1] Three different versions of this policy directive were in force during the time period relevant to the three grievances discussed below. While these three versions are structured and worded differently in certain respects, they are identical with respect to the provisions discussed below. *See* Michigan Department of Corrections, Policy Directive 03.02.130 ¶¶ R-II (eff. Dec. 19, 2003); Michigan Department of Corrections, Policy Directive 03.02.130 ¶¶ P-GG (eff. Mar. 5, 2007); Michigan Department of Corrections, Policy Directive 03.02.130 ¶¶ (eff. July 9, 2007).

the MDOC director. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. The "total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved."

### D. Analysis of Plaintiff's Grievances

1. Grievance MTF-07-07-10454-12D1

Plaintiff filed this grievance on July 5, 2007. (Dkt. #33, Exhibit B). In this grievance Plaintiff asserted that CMS failed to comply with the instructions issued by his treating physicians regarding treatment of his prostate. The only Defendant identified in this grievance is CMS. Defendants Nelson, Lanore, May, and Lee assert that because they are not named in this grievance, it cannot serve to properly exhaust against them any of the claims asserted therein.

MDOC policy provides the following directions for completing grievance forms: "The issues shall be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *See* Michigan Dep't of Corrections Policy Directive 03.02.130 ¶ R (effective March 5, 2007). As this grievance fails to identify Defendants Nelson, Lanore, May, or Lee, it cannot serve to exhaust any of Plaintiff's claims against these Defendants.

2. Grievance MTF-07-10-006-7112-D2

Plaintiff filed this grievance on October 12, 2007. (Dkt. #33, Exhibit B). In this grievance Plaintiff asserted that he was unable to participate in a scheduled ultrasound examination (to

treat his prostate) because an unidentified corrections officer failed to provide Plaintiff with the necessary pre-examination "laxative drink." Plaintiff pursued this grievance through all three steps of the grievance process. The only Defendant identified in this grievance is CMS. Defendants Nelson, Lanore, May, and Lee assert that because they are not named in this grievance, it cannot serve to properly exhaust against them any of the claims asserted therein. As noted above, MDOC policy requires that inmates include in any grievance the "names of all those involved in the issue being grieved." *See* Michigan Dep't of Corrections Policy Directive 03.02.130 ¶ R (effective July 9, 2007). Because this grievance fails to identify Defendants Nelson, Lanore, May, or Lee, it cannot serve to exhaust any of Plaintiff's claims against these Defendants.

3. Grievance MTF 06-11-008390-12G

Plaintiff filed this grievance on November 6, 2006. (Dkt. #1, Exhibit G). In this grievance Plaintiff asserted that "health care" denied his requests to be examined by an ophthalmologist. The information supplied by Plaintiff indicates that he did not pursue this grievance through all three steps of the grievance process. While Plaintiff discusses this particular grievance in his response to the present motion, Plaintiff has not asserted that he pursued this grievance through all three steps of the grievance process. Because this grievance fails to identify any of the Defendants in this matter and was not pursued through all three steps of the grievance process, it cannot serve to exhaust any of the claims asserted in Plaintiff's complaint.

In sum, for the reasons articulated above, the Court concludes that Plaintiff has failed to properly exhaust any of his claims against Defendants Nelson, Lanore, May, or Lee. Accordingly, the Court recommends that Plaintiff's claims against these Defendants be dismissed without prejudice.

**II.        Defendant CMS' Motion to Dismiss**

Plaintiff has named Correctional Medical Services, Inc. (CMS) as a defendant in this matter, apparently because it employs some of the individual defendants. However, CMS is not vicariously liable for the actions of its employees. *See Street v. Corr. Corp. of America*, 102 F.3d 810, 818 (6th Cir. 1996) ("A defendant cannot be held liable under section 1983 on a respondent superior or vicarious liability basis") (citing *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978)); *see also*, *Starcher v. Correctional Medical Systems, Inc.*, 7 Fed. Appx. 459, 465 (6th Cir., Mar. 26, 2001). To establish liability against CMS, Plaintiff must demonstrate that CMS had a "policy, practice or custom that resulted in the injury." *Moreno v. Metropolitan General Hospital*, 210 F.3d 372, 2000 WL 353537 at *2 (6th Cir., Mar. 28, 2000); *see also*, *Starcher*, 7 Fed. Appx. at 465.

Plaintiff has not claimed that his alleged injuries were caused by any policy, practice, or custom implemented by CMS. Accordingly, the Court recommends that Correctional Medical Services is entitled to the dismissal of Plaintiff's claims against it.

**III.       Eleventh Amendment Immunity**

In his complaint, Plaintiff states that he is suing Defendants Aquino, Thompson, Wysozan, Pandya, and Boeve in their "official capacity." (Dkt. #1 at 2-A). These Defendants now move for summary judgment on the ground that they are entitled to Eleventh Amendment immunity.

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI. This provision has long been interpreted as precluding

"federal jurisdiction over suits against nonconsenting States." *Kimel v. Florida Board of Regents*, 528 U.S. 62, 72-73 (2000). Accordingly, the Eleventh Amendment generally precludes federal court actions against a State unless that state has waived its sovereign immunity or consented to suit in federal court.[2] *See Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989)). The Court notes that the State of Michigan "has not consented to being sued in civil rights actions in the federal courts." *Johnson v. Unknown Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004). An action asserted against a State official in his official capacity is considered an action against the State. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). Thus, Defendants Aquino, Thompson, Wysozan, Pandya, and Boeve are entitled to immunity in this matter. Accordingly, the Court recommends that Plaintiff's claims against Defendants Aquino, Thompson, Wysozan, Pandya, and Boeve be **dismissed**.

### IV.        Defendants Irish and Ivens

Plaintiff initiated this action on October 24, 2007. (Dkt. #1). On January 10, 2008, the Court ordered that Plaintiff's complaint be served on the defendants. (Dkt. #4). The attempts to effect service on Defendants Irish and Ivens were unsuccessful. (Dkt. #6, 26-27). More than seven months have since passed and Plaintiff has never requested an extension of time to effect service on Defendants Irish and Ivens, nor has he requested the Court's assistance in effecting service on these Defendants.

Federal Rule of Civil Procedure 4(c) indicates that "[a] summons must be served together with a copy of the complaint." The time frame within which service must be effected is articulated in

---

[2]  The exception to this general rule concerns actions for prospective injunctive or declaratory (non-monetary) relief compelling a state official (in his official capacity) to comply with federal law. *See Ex Parte Young*, 209 U.S. 123 (1908); *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507-08 (6th Cir. 2008) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)). While Plaintiff seeks prospective injunctive relief against Defendant CMS, he does not seek such relief against these particular Defendants.

Rule 4(m), which provides that if service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, "the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant." If the plaintiff demonstrates good cause for such failure, however, "the court shall extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m); *see also*, *Bush v. City of Zeeland*, 2003 WL 22097837 at *2 (6th Cir., Sep. 5, 2003) (citation omitted).

Considering Plaintiff's lack of diligence, the Court recommends that Plaintiff's claims against Defendants Irish and Ivens be **dismissed without prejudice for failure to timely effect service**.

### V.  Plaintiff's Motions to Supplement

Plaintiff seeks to supplement his complaint to assert additional claims against Defendants Nelson and CMS based on events occurring after the initiation of the present action. Defendants oppose Plaintiff's motion, arguing that it would be futile to permit Plaintiff to supplement his complaint because the claims he seeks to add have not been properly exhausted. The Court agrees.

With respect to the supplemental claims in question, Plaintiff has attached copies of the grievances he submitted. (Dkt. #58, Exhibit 1). This material indicates that Plaintiff grieved these matters through Steps I and II of the grievance process. *Id.* Plaintiff acknowledges, however, that he did not pursue the matter through Step III of the grievance process as required. (Dkt. #58 at 5). Plaintiff appears to argue that he failed to pursue this grievance through Step III because prison officials "failed to respond to his Step II grievance in a timely manner." *Id.* As previously noted, however, Plaintiff was required to appeal his grievance to Step III even if prison officials failed to timely respond to his Step II grievance. Specifically, Plaintiff was required to appeal his grievance to Step III within ten business

days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.

Because Plaintiff acknowledges that he has not pursued this matter through Step III of the grievance process, the Court finds that it would be futile to permit Plaintiff to supplement his complaint. Accordingly, the Court recommends that Plaintiff's motions to supplement be **denied**.

## CONCLUSION

For the reasons articulated herein, the Court recommends that <u>Defendants Correctional Medical Services, Inc., William Nelson, M.D., Thomas Lanore, P.A., Jane May, R.N., and Donna Lee, P.A.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)</u>, (dkt. #33), be **granted**; and <u>Defendants Aquino, Thompson, Wysozan, Pandya, and Boeve's Motion to Dismiss under FRCP 12(b)(6)</u>, (dkt. #36), be **granted**. The Court recommends that Plaintiff's claims against the Defendants Irish and Ivens be **dismissed for failure to timely effect service**. The Court also recommends that <u>Plaintiff's Motion to Supplement</u>, (dkt. #57), be **denied**; and <u>Plaintiff's Second Motion to Supplement</u>, (dkt. #61), be **denied**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: November 26, 2008

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge